Creen, J.
delivered the opinion of the court.
The bill charges that Richard G. Waterhouse, late of Rhea county, made his will on 1st. February, 1827, and shortly afterwards departed this life, leaving Richard and Blaekstone his executors, to whom, and to the other defendants his children, and the complainant Elizabeth, he devised his estate. That the complainant, Elizabeth, who was the widow of the said Richard G., but has since intermarried with the complainant, William C. Smart, was not satisfied with the provis-on made for her in the said will, and determined to dissent therefrom within the time prescribed by law. The executors ascertaining her purpose, represented to her that her dissent would throw the whole estate into confusion and produce confusion among the other legatees, and therefore they wished that she would not dissent from the will. Richard Water-house, the oldest of the executors, represented to hor that the estate was not worth more than $40,000, and proposed to give her $5000, or her partin money, if she would change her determination. Being perplexed and not wishing to do any thing that would injure others, she accepted the proposition, and the executors promised to nay her the value of the property to which she would be entitled were she to dissent, and which they said would be about $5000, or that she might elect to take the $5000, or the value of the property when it could be ascertained. The agreement thus made was to be written out by Spencer Jarnagin Esq. as he was expected soon to pass by on his way to court. She was afterwards told that Mr. *99 Jarnagin bad no time to do the writing and that he had passed by, but as new assurances were made to her, she confided in the fulfilment of the contract, and suffered the six months to elapse without dissenting. The bill charges that Richard made the agreement with the fraudulent design of preventing complainant, Elizabeth, from dissenting as the law requires, and that he has fraudulently put her off from time to time with new promises that every thing should be done according to the agreement, until within one year last past, and that she has been thus prevented by fraud from filing her bill. Nor did she .know the value of the estate until the executor filed his expose of the estate, the 2nd of May 1831, in the Rhea county court, whereby the estate appears to be worth $75,000.
Prayer,' that the agreement beenforced andthatshe be reinstated in her right of election. and be now permitted to enter her dissent therefrom, with all the rights to which she would have been entitled had her dissent been entered within the six months prescribed by the statute, and for general relief, &c>
The answer of Richard Waterhouse admits, that the complainant expressed dissatisfaction with the provision which was made for her in the will, and he suggested that she might wish probably to live elsewhere than at the home place, where, by the wi]l she was to reside and be provided for, and that he promised her, that if she became dissatisfied and wished to remove, he would give her $500 out of his part of the estate, and would advise the other children to do the same, but that this sum was not to be given if she married. With this promise complainant appeared perfectly satisfied, and said she wished the agreement reduced to writing by Mr. Jarnagin, to which respondent consented, denies that he prevented by fraud, the agreement from being reduced to writing or that he has made promises since by which said Elizabeth has been deluded. He insists the agreement has been made more than three years, and relies on the statute of limitations of thre’e years, and the statute of two years, and -the statute of frauds, and that the complainant Elizabeth not having dissented^ from the will of her said husband within six months after its probate, she is precluded from doing so now by the positive provisions of the statute.
*100 Samuel R. Hacket, a witness states, that Richard Water-house told him that he had compromised with the widow and agreed to give her $5000, if she would not dissent, which was supposed to be a child’s part. Mira Thompson states, she was present at the time of the contract, that Richard Waler-house was very unwilling that the widow should dissent from the will, and told her he would give her $5000 if she would not. He called $5000 a child’s part of the estate, and said-she should have a child’s part. It was agreed Mr. Jarnagin-should do the writing. William N. Gillesjaie states, that Blackstone Watherhouse told him, that himself and Richard had promised the widow $5000 if she would not dissent from the will,, and that Mr. Jarnagin was to do the writing, he further stated that the time had elapsed and the writings were not drawn, so they did not intend to give her any thing. Several witnesses introduced by the defendants say they heard Richard say he was to give $500 if the widow did not marryr and some of them say they heard Mira Thompson say that the children were each to give the widow $500.
1. The first question for the consideration of the court is, whether the complainant, Elizabeth, was prevented by the fraud of the executors to this will from entering her dissent thereto,according to law. There is no question in the mind of the court, but that a contract was made, by which this widow was promised what she deemed an equivalent to the part of the estate she would be entitled to by law, if she were to dissent from the will. Whether this agreement was that she was to have $5000, or whether she was to have the value of a. child’s-part, and such part was estimated at $5000, does not precisely appear. It is most probable from the proof that $5000 was to be given in lieu of that she would get by law.
That the dissent which the widow intended- to enter to the will was prevented by the solicitation of the executors, and their promise to pay the $5000 cannot be doubted; and the question is, whether this agreement was fraudulently entered into with a view to delude her with the expectation of its ful-filment, until the six months should elapse, within which the statute permitted her to dissent from the will. Both of the executors admit that Jarnagin was to reduce the agreement to *101 writing, and no satisfactory explanation.is given why it wa^ not done. Blackstone, one of the executors, told Gellespie that the time for the widow to dissent had elapsed and that himself and Richard did not intend to give her any thing. This dec-.ration, together with the subsequent refusal to pay any thing, and their concealment for a long time of the true condition of the estate, constitute evidence strongly tending to establish, that when the agreement was made there was no honest purpose to fulfil it; but be this as it may, this agreement was grossly fraudulent on another ground. The bill charges that the estate was represented by Richard, the oldest executor, as being worth only $40,000, but shortly before this suit was brought it was discovered tobe worth $75,000. These charges are amply sustained by the proof. Both Hacket and Mrs. Thompson state that Richard estimated $5000 as equal to a child’s-part. There are five legitimate children and four that are illegitimate. If we suppose that by a child’s part he meant to-include the nine children, that would make the estate worth only $45,000. By the inventory filed by the executor the 2nd May, 1831, the estate is reported to be worth upwards-of $75,000. This misrepresentation of the value of the estate must have been wilful. No reason is given why he did not as well know the value of the estate at the time he made the contract with the widow, as at the time he returned hislinven-tory. As far as we can see, all the information upon which he afterwards acted was in his hands at the time he made that contract. A very large portion of the estate consisted in notes executed to the testator; these were of course in his possession and the amount could have been ascertained in a few hours. The negroes and the lands were all well known to him. He had in his power the means of ascertaining very nearly the' true value of the estate. He was dealing with a woman unaccustomed to business of the kind, without the means of information, and confiding in him for a correct representation of the affairs of the estate. He was bound to disclose the truth, that -she might be enabled to act discreetly with all the facts before her. This he failed to do. He availed himself of her ignorance, and her confidence in him, to misrepresent the facts and to get a most u.nconscientious bargain from her, In addition- *102 |^0 this lie has kept back the inventory from the spring of 1827» his father ched, until May 1831. Ihe will required the executors to make an inventory and state the value ol the estate within two years, and afterwards to do the same thing every year. This was not done, and no excuse is given except that the estate was in litigation. But by his own showing it was still in litigation when he filed his inventory. Besides as he was to make an inventory and state the value of the estate yearly, these statements would show the operation of the law suits, and explain any variation in the amount of the estate. The reason given therefore, rather constitutes a reason why he should have complied with the will, and filed his inventory promptly. At the conclusion of the inventory, the executor remarks that the estate had turned out far beyond his expectations. There is nothing in the case to authorise the belief that this can be true. We have no information of the successful termination of any law suit, or the discovery of any property, of the existence of which, he had not had knowledge when he first became executor. The statement at any rate, was uncalled for when it was made, and must have been placed there for some motive. When it is remembered that he had represented to the widow that the estate was worth only $40,-000, and now by his own showing, it was about to be made public that it was worth nearly double as much, he felt that it was necessary to say something to explain away what would appear his palpable misrepresentations. In this instance his conscious guilt in attempting an apology, has furnished evidence of its existence.
From this view of the case we are of opinion, that Richard Waterhouse, the acting executor, fraudulently concealed from the widow the true value of the estate, and induced her to make abargain by which she was prevented from dissenting from her husband’s will, and consented to take a much less sum than she would have been entitled to had she dissented. It is unnecessary to notice bis answer. If the facts stated in it be true, the fraud is if possible more gross than that made out by the bill and proof. If, as be says, for an interest in the estate which she was about to obtain by dissenting from the will, worth near $10,000, she consented to talco his promise for *103 $500, aud his advice to the other children who were infants to pay a like sum when they became of age, the inadequacy of the consideration is so gross as to shock the miud and constitute of itself evidence of fraud.
2. But it is insisted that no matter what circumstances of hardship, or of fraud may exist in the case, a widow cannot obtain the benefit of the act of 1784, c 22, § 8, unless she dissented front the will of her husband within six months. The preamble declares, that the dower allotted by law to widows, was inadequate to their support, and that it was highly just and reasonable that those who have contributed to raise up an estate for their husbands should share in it, after which it is enacted, “that if any person shall die intestate, or shall make his last will and testament, and not therein make any express provision for his wife, by giving or devising to her such part or parcel of his real or personal estate, or to some other for her use, as shall be fully satisfactory to her, such widow may signify her dissent thereto before the judges of the supreme court, or in the court of the county wherein she resides, in open court within six months after the probate of the said will and, she shall be entitled,” &c.
The whole scope of this act is in a spirit of liberality towards widows. That feeling is manifest not only in the preamble, but also in the body of the section. It authorises her to dissent, unless the provision made for her shall be fully satisfactory. But in fixing the short period of six months and in making no exception in favor of cases of disability, that spirit is wholly departed from, and a very harsh provision is made, if the construction contended for by the defendants counsel be the true one. But whether in cases of disability to make the dissent, an elegtion can afterwards be had, it is not now necessary to decide. The case now before the court proceeds upon entirely a different principle. This woman has been prevented by the fraud of those who were interested in the estate from entering her dissent. She was about to avail herself of the provisions of an act made for her benefit, and the defendants interposed, and by fraud prevented her, and now they set up the consequence of this fraudulent act as a bar to the right she would have obtained; this we think they cannot do. *104 Jt ¡s a rule laid down and acted on in many cases, that where act has been prevented from being done by iraud, equity ■ , , , t I -will consider it exactly as it it bad been done. 1 Jac. and Walk. 96: 11 Ves. 638. 14 Ves. 290: 3 Cow. Rep. 537; Story’s Eq. § 187, 256. The case of Luttrell vs. Almions, cited in Jac. and Walk. 96: 11 Ves. 638; and by which the court in those cases was governed, is in principle precisely like the one before the court. There, a tenant in tail having been fraudulently prevented from suffering a recovery, the estate was treated as if the recovery had been suffered, though in favor of a volunteer and .against one not a party to the fraud. So, here, we think this estate must be disposed of as if the dissent to the will had been made within the six months.
3. But it is insisted the statute -of limitations is a bar to the complainant’s claim. We think the statute of limitations has oo application. Treating the subject as though that had been done, which by the fraud of the defendants was prevented, it places the question as it would have stood had the dissent been entered in the six months. Had that been done, it would not be questioned but that these executors would have been in the execution of an express trust. Upon the dissent of the widow, the executors wouldjiave occupied precisely the relation to her, that an administrator in a case of intestacy sustains to the distributees, and legacies and distributive shares' are not affected by the act of limitations. Ang. on Lim. 336: 3 John. Ch. Rep. 215 to 217: Armstrong vs. Campbell, 3 Yer. Rep. An administrator takes possession of the property as a trustee; he can hold in no other character. It is not a case where a party takes possession in his own right and is turned into a trustee by matter of evidence. In such case the statute of limitations would operate. But it is well settled upon reason and authority, that in cases of direct and express trust it vyill not.
If therefore, equity will place the present complainant in the situation she would have occupied had the fraud not been committed, it follows that the statute of limitations is no bar to the relief she seeks.
But the bill charges, and the proof shows, that the value of this estate which was only known to the executors, was con *105 cealed by them when they made the contract that prevented the dissent, and that the information of their fraud in this particular, came to the knowledge of the complainants only about on? year before the bill was filed.
It is settled law in this court, that if a right be acquired by fraud, and the cause of action be by fraud concealed from the plaintiff, in a court of chancery the statute will only run from the time the fraud is discovered. Haywood vs. Marsh, 6 Yer. Rep.: Reeves and Hyter vs. Ewing, 8 Yer. Rep. We think the relief given by the chancellor by which a specific execution of the contract for $5,000 was decreed is erroneous, and that it be reversed and that the complainants are entitled to a child’s part of the personal estate, and that complainant Elizabeth is entitled for life to one third of the real estate of which Richard G. Waterhouse died seized, as dower.
Decree reversed.